UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT HERB, *individually and on behalf of all others similarly situated*, | ) ) | |
| | ) | CIVIL ACTION NO. 1:22-CV-11416-JEK |
| Plaintiff, | ) ) | |
| v. | ) ) | (Leave to File Memorandum in Excess of Local Rule 7.1(b)(4) 20-Page Limitation |
| | ) | Granted June 3, 2024) |
| HOMESITE GROUP INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | JUNE 7, 2024 |

## <u>MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT</u>

Joseph F. Scott*
Ohio Bar No. 0029780
Ryan A. Winters*
Ohio Bar No. 0086917
SCOTT & WINTERS LAW FIRM, LLC
P: (216) 912-2221 F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II*
Ohio Bar No. 0090455
SCOTT & WINTERS LAW FIRM, LLC
P: (216) 912-2221 F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*and*

Philip J. Gordon
Mass. BBO# 630989
Kristen M. Hurley
Mass. BBO# 658237
GORDON LAW GROUP, LLP
585 Boylston St.
Boston, MA 02116

Diane M. Saunders (BBO# 562872)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
617.994.5700 office
617.994.5704 direct
617.699.2375 mobile
617.994-5701 fax
diane.saunders@ogletreedeakins.com

*Attorney for Defendant*
*Homesite Group Incorporated*

617-536-1800 – Telephone
617-536-1802 – Facsimile
pgordon@gordonllp.com
khurley@gordonllp.com

*Attorneys for Plaintiff and Proposed FLSA
Collective Action Plaintiffs*

*Proceeding PRO HAC VICE

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ iv

I.      Introduction ........................................................................................................ 1

        A.      Factual Allegations ................................................................................ 1

        B.      Overview of Investigation, Discovery, Litigation, and Settlement ....... 3

II.     Summary of the Settlement Terms ..................................................................... 7

        A.      The Settlement Fund .............................................................................. 7

        B.      Eligible Employees ................................................................................ 7

        C.      Claim Procedure..................................................................................... 8

        D.      Allocation Formula and Payment Procedure ......................................... 9

        E.      Service Award........................................................................................ 9

        F.      Release ................................................................................................... 9

        G.      Settlement Claims Administration ....................................................... 10

        H.      Attorney Fees and Litigation Costs...................................................... 10

III.    Argument .......................................................................................................... 11

        A.      A One-Step Approval Process is Standard for FLSA Settlements ....... 11

        B.      The Settlement is Fair and Reasonable, and Should be Approved ....... 12

        C.      The Proposed Settlement Notice and Claim Form Should be Approved ........... 17

        D.      The Service Award to Plaintiff Herb Should Be Approved ................. 18

        E.      Plaintiffs' Counsel's Request for Attorney Fees and Costs Should be Approved as Fair and Reasonable ...................................................... 22

IV.     Conclusion ........................................................................................................ 30

Certificate of Service ..................................................................................................... 32

Certificate of Compliance with Page Limitation Requirements .................................... 32

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) .................................. 24

*Anderson v. Team Prior, Inc.,* D.Me. No. 2:19-cv-00452-NT, 2022 U.S. Dist. LEXIS 196144 (Oct. 28, 2022) ..................................................................................... 21

*Aros v. United Rentals, Inc.,* D.Conn. No. 3:10-CV-73 (JCH), 2012 U.S. Dist. LEXIS 104429 (July 26, 2012) .................................................................................. 20

*Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) ....................................................................................................... 24

*Beebe v. V&J Natl. Ents., LLC*, W.D.N.Y. No. 6:17-CV-06075 EAW, 2020 U.S. Dist. LEXIS 96059 (June 1, 2020) ............................................................................ 27

*Besic v. Byline Bank, Inc.,* N.D.Ill. No. 15 C 8003, 2015 U.S. Dist. LEXIS 197438 (Oct. 26, 2015) ................................................................................................. 11

*Bezdek v. Vibram USA Inc.,* 79 F. Supp. 3d 324 (D.Mass.2015) ................................................... 30

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ......................................................................... 23

*Bozak v. FedEx Ground Package Sys.,* D.Conn. No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042 (July 31, 2014) ........................................................................ 18

*Bryant v. Potbelly Sandwich Works*, LLC, S.D.N.Y. No. 1:17-cv-07638 (CM) (HBP), 2020 U.S. Dist. LEXIS 21900 (Feb. 4, 2020) ............................................................ 27

*Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042 (D. Mass. May 19, 1999) ....................................................................................................... 19

*Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240 (11th Cir. 2003) ................... 12

*Carlson v. Target Enters., Inc.,* 447 F. Supp. 3d 1 (D. Mass. 2020) ............................................ 30

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ....................................... 13

*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) ......................................... 24, 26

*Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998) ......................................................................... 19

*Crenshaw v. Texas Roadhouse, Inc., et al.*, No. 11 Civ. 10549 (D. Mass. September 5, 2012) ....................................................................................................... 24

*Cunha v. Avis Budget Car Rental, LLC,* 221 F. Supp. 3d 178 (D.Mass.2016) ............................ 12

*Curtis v. Scholarship Storage Inc.,* D.Me. No. 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 70410 (May 31, 2016) ......................................................................... 12, 13, 23

*Cutter v. HealthMarkets, Inc., et al.*, No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) ................... 24

*DeLeon v. Wells Fargo Bank, N.A.,* S.D.N.Y., 2015 U.S. Dist. LEXIS 65261 (May 7, 2015) .......................................................................................................................... 20, 21

*Dickerson v. York Int'l Corp.*, No. 15-cv-1105, 2017 U.S. Dist. LEXIS 133587, 2017 WL 3601948 (M.D. Pa. Aug. 22, 2017)................................................................................ 27

*Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (Mar. 8, 2010)......................................................................................... 23

*Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600 (1st Cir. 1990) ............................... 13

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir.2012)............................................. 20

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013).................................................... 12

*Guippone v. BH S&B Holdings, LLC,* S.D.N.Y., 2011 U.S. Dist. LEXIS 126026 (Oct. 28, 2011) ....................................................................................................................... 20, 23

*Hall v. Cole*, 412 U.S. 1 (1973) ................................................................................................. 23

*Harris v. Wells Fargo Bank, N.A., D.Ariz. ,* 2019 U.S. Dist. LEXIS 248499 (May 13, 2019) ...... 6

*Harris v. Wheatleigh Corp.*, D.Mass. No. 3:18-cv-30114-KAR, 2024 U.S. Dist. LEXIS 69924 (Apr. 16, 2024)................................................................................................... 13

*Henry v. Little Mint, Inc.,* S.D.N.Y., 2014 U.S. Dist. LEXIS 72574 (May 23, 2014)................. 17

*Hoaglan v. Grede Holdings LLC*, E.D.Wis. No. 20-cv-425-pp, 2022 U.S. Dist. LEXIS 122574 (July 12, 2022) ............................................................................................... 11

*Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)............ 12

*In re Celexa & Lexapro Marketing & Sales Practices Litigation,* D.Mass. No. MDL No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041 (Sep. 8, 2014)....................................... 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003) ......................................................................................................................... 25

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................. 27

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ............................................. 25, 26

*In re Thirteen Appeals, In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir.1995) ................................................. 22, 23, 25

*Iriarte v. Cafe 71, Inc.,* S.D.N.Y., 2015 U.S. Dist. LEXIS 166945 (Dec. 10, 2015)................... 12

*Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227 (D. Me. 2011).......................................... 12

*Jones v. Agilysys, Inc.*, N.D.Cal. No. C 12-03516 SBA, 2014 U.S. Dist. LEXIS 68562 (May 19, 2014) ................................................................................................ 6

*Knox v. Jones Group,* S.D.Ind. No. 15-cv-1738 SEB-TAB, 2017 U.S. Dist. LEXIS 146049 (Aug. 31, 2017) ................................................................................................ 11

*Koszyk v. Country Fin., N.D.Ill.,* 2016 U.S. Dist. LEXIS 126893 (Sep. 16, 2016) .................... 20

*Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994 (May 30, 2012) ................................................................................................ 6

*Lapan v. Dick's Sporting Goods, Inc.,* D.Mass. No. 1:13-cv-11390-R, 2015 U.S. Dist. LEXIS 169508 (Dec. 11, 2015) ................................................................................ 17, 18

*Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) ........................ 24

*Long v. HSBC USA Inc*., No. 14 CIV. 6233, 2016 U.S. Dist. LEXIS 124199, 2016 WL 4764939 (S.D.N.Y. Sept. 13, 2016) ................................................................................ 26

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................................ 13

*Massiah v. MetroPlus Health Plan,* Inc., No. 11-cv-05669(BMC), 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .................................................... 21

*Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) ................................ 24

*Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006 (7th Cir. 1980) ................................................................................................................ 13

*Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970) ................................................................ 23

*Mongue v. Wheatleigh Corp*., D.Mass. No. 3:18-cv-30095-KAR, 2024 U.S. Dist. LEXIS 69928 (Apr. 16, 2024) ................................................................................................ 21

*Myers v. Hertz Corp*., 624 F.3d 537 (2d Cir. 2010) ................................................................ 12

*New Eng. Carpenters Health Benefits Fund v. First Databank*, D.Mass. No. 05-11148-PBS, 2009 U.S. Dist. LEXIS 68419 (Aug. 3, 2009) .................................................... 25, 27

*Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292 (11th Cir.1988) .................................... 22

*O'Connor v. Oakhurst Dairy,* D.Me. No. 2:14-cv-00192-NT, 2015 U.S. Dist. LEXIS 67029 (May 22, 2015) ................................................................................ 12, 23

*O'Donnell v. Robert Half Int'l, Inc.,* 534 F. Supp. 2d 173 (D. Mass. 2008) .............................. 15

*Pallotta v. Univ. of Massachusetts Mem. Med. Ctr.,* D.Mass. Civil Action No. 4:22-cv-10361-ADB, 2023 U.S. Dist. LEXIS 215863 (Dec. 5, 2023) .......................................... 21

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,* No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .............................. 20

*Pieber v. SVS Vision, Inc.,* No. 20-13051, 2022 U.S. Dist. LEXIS 41373 (E.D. Mich. Mar. 8, 2022) ................................................................................................. 11

*Pike v. New Generation Donuts, LLC*, D.Mass. Civil Action No. 12-12226-FDS, 2016 U.S. Dist. LEXIS 21174 (Feb. 20, 2016) ................................................................ 12

*Prena v. BMO Fin. Corp.,* N.D.Ill. No. 15 C 09175, 2015 U.S. Dist. LEXIS 65474 (May 15, 2015) ..................................................................................................... 11

*Quintana v. HealthPlanOne LLC*, D.Ariz. No. CV-18-02169-PHX-RM, 2019 U.S. Dist. LEXIS 124017 (July 24, 2019), ............................................................................ 6

*Rikos v. P&G,* S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (Apr. 30, 2018) ........ 27

*Roberts v. TJX Cos*., D.Mass. Civil Action No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987 (Sep. 30, 2016) ............................................................................... 26

*Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912 (June 15, 2010) ......................................................................... 6

*Sakiko Fujiwara v. Sushi Yasuda Ltd*., 58 F. Supp. 3d 424 (S.D.N.Y. 2014) .............................. 26

*Scovil v. FedEx Ground Package Sys*., D.Me. No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361 (Mar. 14, 2014) ..................................................................... passim

*Sewell v. Bovis Lend Lease LMB, Inc*., S.D.N.Y., 2012 U.S. Dist. LEXIS 53556 (Apr. 16, 2012) ..................................................................................................... 20

*Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258 (D. Mass. 2015) ......................... 13

*Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 303 U.S. App. D.C. 94 (D.C. Cir. 1993) ........ 23

*United States v. Cannons Eng'g Corp*., 899 F.2d 79 (1st Cir. 1990) ........................................... 13

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................................. 19, 20

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043 (9th Cir. 2002) ....................................................... 25

*Walls v. JP Morgan Chase Bank*, N.A., Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ........................................................... 27

*Woolfson v. Caregroup, Inc.,* D.Mass. Civil Action No. 1:09-cv-11464, 2010 U.S. Dist. LEXIS 145990 (Sep. 13, 2010) ...................................................................... 14

**Statutes**

29 U.S.C. § 216 ............................................................................................................... 3, 16

**Other Authorities**

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends
III: What Explains Settlements in Shareholder Class Actions? (National Economic
Research Assocs. (NERA) June 1995.................................................................................. 7

Manual for Complex Litigation (Fourth) § 14.122 (2004) ........................................................ 25

*Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An
Empirical Study*, 53 UCLA L.Rev. 1303 (2006) ............................................................ 21

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... 11, 12

Fed. R. Civ. P. 26 ........................................................................................................................... 28

Local Rule 7.1 .......................................................................................................................... i, 32

## I.    INTRODUCTION

Plaintiff Robert Herb and Defendant Homesite Group Incorporated ("Defendant" or "Homesite") (collectively referred to as the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement, which followed a thorough investigation and months of comprehensive discovery, as well as mediation before Attorney and Mediator Michael Russell of Miles Mediation & Arbitration, in addition to months of post-mediation settlement discussions, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was reached after in-depth investigation and review of significant documentary evidence and payroll data, was the result of arm's-length settlement negotiations assisted by a private and qualified mediator and between experienced counsel, and provides good value to the workers it will benefit.

### A.    Factual Allegations

Defendant Homesite is a Property and Casualty Insurance Company headquartered in Boston, Massachusetts. Defendant Homesite utilizes non-exempt Sales Agent employees in furtherance of its business purpose. Former Named Plaintiff Melissa Deaver commenced this action on September 1, 2022, ECF Doc. 1, *on behalf of herself an all other similarly situated* employees of Defendant to recover unpaid wages due arising out of Defendant's alleged overtime underpayment policies and practices. On May 6, 2024, Named Plaintiff Robert Herb filed Plaintiff's First Amended Class and Collective Action Complaint (ECF Doc. 50, the "Amended Complaint"), which most materially substituted Robert Herb as Named Plaintiff and putative Class Representative and made minor modification to the class/collective definitions.

Plaintiff Herb was employed by Defendant as a non-exempt Sales Agent employee. ECF Doc. 50 at ¶ 19. Plaintiff's Amended Complaint alleged that he and other members of the FLSA Collective were required by Defendant to perform unpaid work before clocking in each day, including but not limited to starting and logging into Defendant's computer systems, numerous software applications and programs, and phone system. *See generally id.* at ¶¶ 26 – 37. Plaintiff Herb alleged that these activities are "integral and indispensable" to the principal activities that Plaintiff Herb and other Class Members were employed to perform, and therefore, compensable. *Id.* at ¶ 29.

Plaintiff Herb further alleged that he and other Class Members performed post-shift duties, such as closing and logging out of Defendant's computer systems, numerous software applications and programs, and phone system for which he and the other Class Members were not compensated, *see id.* at ¶ 32, as well as that Defendant's failure to incorporate various forms of required remuneration, including but not limited to incentive bonuses and commissions, Defendant paid to its workers into the regular rate when calculating overtime, violated the FLSA and state law, *see generally id.* at ¶¶ 46-52.

Defendant, on the other hand, deeply disputed the claims raised by Plaintiff. Defendant's contention is that it had no such knowledge that such work was even being done (which it contests). Defendant contends that it established a reasonable process for employees to report work performed before and after shifts, and that no remuneration was missed when calculating the proper overtime rate. Therefore, Defendant argued that it is not liable if an employee failed to report the work performed through the established process. *See generally* ECF Doc. 54, Answer to Amended Complaint; *see also* Section III, B below. Defendant also vigorously disputed Plaintiff's Herb's regular rate allegations.

2

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiffs would need to: (1) convince the Court that the FLSA overtime claims should proceed on a collective basis under 29 U.S.C. § 216(b); (2) prove that each worker of the collective performed unpaid overtime hours each workweek, in addition to the amounts of these times, and defeat Defendant's argument that the times and amounts of pre- and post-shift overtime hours Plaintiffs allege, both with regard to frequency and duration, are an exaggeration that cannot be supported with admissible evidence; (3) defeat Defendant's legal and factual arguments that all required applicable remuneration was included properly in the regular rate when calculating overtime compensation; and (4) defeat Defendant's legal and factual arguments that any violation was not willful and that Defendant is entitled to a good faith defense.

### B.    Overview of Investigation, Discovery, Litigation, and Settlement

Prior to the commencement of this action, Plaintiffs' Counsel engaged in a thorough investigation of the potential claims and defenses based upon information and documentation available to them and research of Defendant's business operations. Subsequent to the filing of the original Complaint, the Parties immediately began comprehensive discovery.

The Parties engaged in extensive discovery, and Defendant produced voluminous wage-and-hour data and documents necessary to enable the Plaintiffs to fully and fairly evaluate the overtime claims in this case. On February 13, 2023, Plaintiffs' Counsel served Plaintiffs' Omnibus First Set of Discovery Requests to Defendant requesting, among other things, all records pertaining or related to employee handbooks; human resources policies, manuals, or memos; timesheets and other timekeeping records; any review or other modification of hours, timekeeping, or other wage and hour records; and all other records for Plaintiffs relating or

pertaining to the activities, duties and tasks of these workers, including, but not limited to, any records generated by scheduling, tracking, logging, timing, clocking, measuring, recording, or monitoring the time worked by Plaintiffs. Defendant ultimately produced voluminous compensation and timekeeping data and documents in addition to PDF and Microsoft Excel spreadsheets where available.

Prior to engaging in settlement negotiations and in the initial phase of discovery, Defendant provided relevant policies, and over 3,000 PDF documents and over 25 Microsoft Excel spreadsheets containing payroll and related wage and hour data. Plaintiffs' Counsel electronically reviewed and analyzed, as applicable, the relevant data in an aggregate format for computation and analysis. On about June 1, 2023, the Parties entered into an "Agreement Concerning Settlement Negotiations," providing for tolling and the parameters for settlement discussions for potential resolution. On July 14, 2023, Defendant provided a data analysis which identified 439 individuals in 28 different states. On October 27, 2023, Defendant provided additional data analyses containing timekeeping and payroll data for settlement purposes. Ultimately, counsel's computation, supplemented by the data and analysis provided by Defendant, considered relevant wage and hour data and permitted a calculation of the unpaid wages for Plaintiffs. Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Ultimately, the Parties agreed to pursue a private mediation for the resolution of Plaintiffs' claims. Prior to the mediation, Plaintiffs provided Defendant with a detailed analysis of the claims for all potential collective members based on the data provided by Defendant. The Parties engaged Attorney Michael Russell of Miles Mediation and Arbitration to serve as the mediator. Attorney Russell is regarded as a highly experienced and qualified mediator for employment cases, including collective and class actions.[1] The Parties engaged in mediation on November 15, 2023. Despite the Parties' best efforts, this mediation was unsuccessful, as the Parties were still at an impasse at the end of the mediation. Over the next several months, the Parties continued their negotiations, and additional data was exchanged in an effort to narrow the Parties' positions, culminating in settlement of the action. *See* ECF Doc. 44, Notice of Settlement.

The Settlement achieves an excellent result for Class Members. From the total settlement amount, Class Members will be paid the total allocated amount (the "Net Settlement Fund," after deduction of all fees, service award, and costs) of $461,686.30, resulting in an approximate additional 9.2 minutes[2] of pay per day worked during overtime weeks over the class period

---

[1] *See, e.g.,* https://milesmediation.com/neutrals/michael-russell/ (last accessed June 2, 2024); https://www.aaamediation.org/find-mediator/mediator/2575743/generatepdf (last accessed June 2, 2024); https://www.nadn.org/pdf/Michael-Russell.pdf (last accessed June 2, 2024); https://www.tennesseemediators.org/michael-russell (last accessed June 2, 2024).

[2] As noted in Section III, B, *infra*, Defendant disputed both the time involved to perform pre-shift duties and that employees were required to have those duties completed prior to the assigned start time for their workday, and contended that any startup time, if compensable, required mere seconds at the start of the workday, not several minutes as claimed by Plaintiffs. Defendant also contends that, to the extent such time was compensable work as defined by the FLSA, it would be subject to the de minimis exception and not compensable. Finally, Defendant contends that it maintains established policies and practices and a straightforward process for Sales Agents to report any work completed before and after shifts, and that Sales Agents were in fact required by Defendant to report any work completed "off the clock."

(based on an exported analysis over the 6/6/2020 to 2/15/2024 class period based on the data produced by Defendant that considered weekly hours and potential overtime damages from the period of 1/2/2021 to 7/28/2023, including overtime hours worked by, and average hourly rates of, each Sales Agent). The recovery for the covered employees is significantly greater than the payments equating to several minute payouts in other call-center related lawsuits in which other workers sought payment for pre- and/or post-shift activities. For example, in *Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (May 30, 2012), the court approved a settlement in which employees' payments equated to extra four minutes per day worked, if employees worked 39.67 hours or more in a given week. In *Harris v. Wells Fargo Bank, N.A., D.Ariz.* , 2019 U.S. Dist. LEXIS 248499, at *17 (May 13, 2019), the court approved a settlement calling for an additional 15 minutes of overtime *per week* (or 3 minutes *a day* based on a 5-day workday). In *Quintana v. HealthPlanOne LLC*, D.Ariz. No. CV-18-02169-PHX-RM, 2019 U.S. Dist. LEXIS 124017, at *9 (July 24, 2019), the Court approved a settlement with an "approximate payout of … about 5 minutes of unpaid work per day." *Id.* (noting that "district courts in this Circuit have approved settlement recoveries less than 30 to 50 percent of the Plaintiff's possible recovery (citing *see, e.g., Jones v. Agilysys, Inc*., N.D.Cal. No. C 12-03516 SBA, 2014 U.S. Dist. LEXIS 68562, at *9-10 (May 19, 2014) (approving an FLSA settlement at 30 to 60 percent of possible recoverable damages)). Finally, in *Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *3, 20-21 (June 15, 2010), the court approved an "exceptional" settlement recovery in case alleging violations of the FLSA relating to "booting-up Defendant's computer systems and initializing Defendant's numerous software programs" where class members recovered 25% of the damages they would have recovered by proving 8 minutes of unpaid wages per day, or 75% of their

damages by proving 5 minutes of unpaid work each day. *Id.* (noting that "[s]uch an allocation is well above the 7 % to 11 % average result achieved for class members.") (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). There is little doubt that the recovery in this case is an excellent result for all covered Class Members. Ultimately, to the extent they decide to opt-into the matter, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Class Members representing a substantial percentage of the potential value of their claims, and achieves a fair and reasonable result for the covered employees.

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

The Settlement and Release Agreement ("Settlement Agreement") establishes a fund of $725,000.00 (the "Fund" or "Gross Settlement Amount") from which Collective Action "Eligible Settlement Class Members" (hereinafter also referred to as "Class Members") can claim settlement awards. *See* Ex. A, Settlement Agreement ¶¶ 1.9, 1.11, 3.1. The Fund covers any Court-approved Service Fee Award to Plaintiff, any Court-approved attorney fees and costs, and the Settlement Administrator's fees and costs in the amount of $12,978.00, in addition to Class Member awards.

### B.    Eligible Employees

"Eligible Settlement Class Members" means any and all current and former employees employed by Defendant in the position of Sales Agent employed by Homesite during the Class Period, from June 6, 2020 (three years prior to the Tolling Date) through February 15, 2024 (the date the terms of this settlement were agreed upon.

### C.    Claim Procedure

The Settlement Administrator will mail the Notice of Settlement and Opportunity to Join Collective Action to all Eligible Settlement Class Members within 10 days of the Effective Date. *Id.* ¶ 2.7. The proposed Settlement Notice and Claim Form will inform Eligible Settlement Class Members of the nature of the claims made, the terms of the Settlement, their individual settlement allocations (which the Settlement Administrator will calculate based on Defendant's data), the scope of the release, their right to participate or not, and provide a claim form for them to submit. *See* Ex. C: Ex. 1 to Settlement Agreement – Notice of Settlement And Opportunity to Join Collective Action ("Notice").

To submit a Claim Form, Eligible Settlement Class members have the later of: (i) the 45-calendar day period beginning immediately after the Settlement Administrator first mails a Settlement Notice and Claim Form to any of the Eligible Settlement Class Members; or (ii) for individuals receiving a re-mailing, forty-five (45) days from the Settlement Administrator's last re-mailing of a Settlement Notice and Claim Form that was returned as undeliverable. *See id.* ¶ 1.3.

To be timely, a Claim Form must be completed as instructed on the Claim Form and signed, dated and postmarked or otherwise returned (via fax, e-mail or online submission) to the Settlement Administrator within the Claim Period. Claim Forms that are not timely returned are null and void, unless otherwise agreed to in writing by the Parties, if good cause is determined by the Claims Administrator, or approved by the Court. *See id.* ¶ 2.8. The Settlement Agreement provides various protocols in the event that a Claim Form is returned to the Settlement Administrator and not properly completed, which would allow Eligible Settlement Class members to cure a deficient Claim Form. *Id.*

8

**D.    Allocation Formula and Payment Procedure**

To become a Participating Settlement Class Member and receive a Settlement Check, each Eligible Settlement Class Member must fill out and timely submit a Claim Form, as outlined in ¶¶ 1.17, 2.8, 3.4 of the Settlement Agreement and explained in the Notice. The Settlement Amount for each Eligible Settlement Class Member will be determined by the Settlement Administrator by calculating each Eligible Settlement Class Member's percentage share of the Net Settlement Fund (in the total amount of $461,686.30) based on his/her/their weeks of employment during the Class Period divided by all weeks of employment of all Eligible Settlement Class Members during the Class Period. *Id.*, ¶ 3.4(i). For tax purposes, 50% of the payments to Participating Settlement Class Members shall be treated as back wages and 50% of the payments shall be treated as interest, any applicable penalties, and liquidated damages. *Id.* ¶ 3.4(v). Defendant's share of payroll taxes on the back wage portion of the payments to Participating Settlement Class Members is in addition to the Gross Settlement Amount. *Id.* Participating Settlement Class Members have one hundred twenty (120) days following the issuance of Settlement Checks to negotiate their Settlement Checks. *Id.* ¶ 3.4(iii).

**E.    Service Award**

The Settlement Agreement provides that Plaintiff Herb will receive a $3,000.00 Service Award in recognition of his assistance rendered in obtaining the benefits of the settlement for the collective as well as the risks he took to do so. Ex. A, Settlement Agreement ¶ 3.3. Moreover, Plaintiff Herb has agreed, in consideration for the service award payment, to a complete release of claims against Defendant. *Id.* ¶ 4.4.

**F.    Release**

Settlement Checks shall contain the following limited endorsement:

> By accepting this payment, I waive any right to bring suit for unpaid overtime compensation under the Fair Labor Standards Act and all other applicable state and local laws for overtime wages claims up to and including the date of my signature. I agree that by accepting this payment, I have settled my claims for any unpaid wages, liquidated damages, interest, and associated fees and penalties through the date of my signature to endorse this check.

Ex. A, Settlement Agreement ¶ 4.1. Any Eligible Settlement Class Member who does not timely execute and return a Claim Form will not be bound by any release of claims. *Id.* at ¶ 4.3.

### G.    Settlement Claims Administration

The Parties have retained Optime Administration, LLC, a qualified wage and hour claims administrator, to serve as the Settlement Administrator. The Settlement Administrator will be responsible for, among other things, establishing a QSF account; preparing and mailing the Settlement Notice; preparing and mailing Settlement Checks; distributing the Service Award and attorneys' fees and expenses; calculating and paying all appropriate taxes; and calculating all Settlement Amounts to be paid to Participating Settlement Class Members. *See id.* at ¶ 2.2. Subject to Court approval, Optime Administration, LLC will be paid $12,978.00 to complete its duties as Settlement Administrator.

### H.    Attorney Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive one-third of the Gross Settlement Amount (or $241,642.50 of the $725,000.00 gross settlement amount) as attorneys' fees, plus reimbursement of actual case-related costs and expenses in the itemized amount of $5,693.20, which represent reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter. *See* Ex. D, R. Winters. Decl. ¶ 38.

### III.    ARGUMENT

#### A.    A One-Step Approval Process is Standard for FLSA Settlements

A one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23"). *See, e.g., Prena v. BMO Fin. Corp.,* N.D.Ill. No. 15 C 09175, 2015 U.S. Dist. LEXIS 65474, at *1-2 (May 15, 2015) (finding that a two-step process was not necessary in the FLSA collective action context, stating that "[o]ne step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)" and "[t]here is no other reason unique to this case that prompts the need for a two-step process (for example, two steps might be needed if the one-step process would be unduly influential in causing members to opt-in without considering all of the risks and the benefits are very low…)"); *Hoaglan v. Grede Holdings LLC*, E.D.Wis. No. 20-cv-425-pp, 2022 U.S. Dist. LEXIS 122574, at *3 (July 12, 2022); *Pieber v. SVS Vision, Inc.,* No. 20-13051, 2022 U.S. Dist. LEXIS 41373, at *9 (E.D. Mich. Mar. 8, 2022) ("The one-step approval process requested is appropriate because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action."); *Knox v. Jones Group,* S.D.Ind. No. 15-cv-1738 SEB-TAB, 2017 U.S. Dist. LEXIS 146049, at *6 (Aug. 31, 2017); *Besic v. Byline Bank, Inc.,* N.D.Ill. No. 15 C 8003, 2015 U.S. Dist. LEXIS 197438, at *2-3 (Oct. 26, 2015) (court approved a "one-step process rather than a two-step process used in class action settlements").

This is because FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions as only individuals who affirmatively choose to join the litigation are bound by the outcome. *See, e.g., O'Connor v. Oakhurst Dairy,* D.Me. No. 2:14-cv-00192-NT,

2015 U.S. Dist. LEXIS 67029, at *10 (May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."); *Cunha v. Avis Budget Car Rental, LLC,* 221 F. Supp. 3d 178, 181 (D.Mass.2016) ("Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment.") (quoting *Iriarte v. Cafe 71, Inc.,* S.D.N.Y., 2015 U.S. Dist. LEXIS 166945, at *6 (Dec. 10, 2015), citing *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010)); *Pike v. New Generation Donuts, LLC*, D.Mass. Civil Action No. 12-12226-FDS, 2016 U.S. Dist. LEXIS 21174, at *9-10 (Feb. 20, 2016) (same); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]") (citing *see Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 177-178, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). Where, as in this matter, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for opt-outs or objections. *See Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011) ("The central difference between collective certification under the FLSA and under Rule 23 is the FLSA's requirement that those interested in joining the putative class opt in, while Rule 23 certification requires the uninterested to opt out.") (citing *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003)).

### B.    The Settlement is Fair and Reasonable, and Should be Approved

This Court may approve this FLSA settlement as it was reached as a result of contested litigation to resolve a *bona fide* dispute. *See, e.g., Curtis v. Scholarship Storage Inc.,* D.Me. No. 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 70410, at *3-4 (May 31, 2016) ("A court may approve a FLSA settlement if it is 'a fair and reasonable resolution of a bona fide dispute over FLSA

provisions.'") (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)); *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 261 (D. Mass. 2015); *Scovil v. FedEx Ground Package Sys.*, D.Me. No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *32-33 (Mar. 14, 2014).

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g.*, *Harris v. Wheatleigh Corp.*, D.Mass. No. 3:18-cv-30114-KAR, 2024 U.S. Dist. LEXIS 69924, at *2-3 (Apr. 16, 2024) ("Court approval requires a finding that all parties have agreed to the settlement and that it represents 'a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.''") (citing *Singleton*, 146 F. Supp 3d at 260, citing *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Foods,* 679 F.2d at 1353). If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Curtis,* 2016 U.S. Dist. LEXIS 70410, at *3-4 ("The court's role is to ensure that the settlement 'reflect[s] a reasonable compromise over issues . . . that are actually in dispute,' rather than a pure discount on clearly-owed wages") (quoting *Lynn's Foods*, 679 F.2d at 1354); *see also United States v. Cannons Eng'g Corp*., 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation marks omitted) (citing *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)).

The settlement in this case easily meets the standard for approval. The settlement was the result of extensive pre-suit investigation, comprehensive discovery, and substantial arm's-length negotiations. *See, e.g., Woolfson v. Caregroup, Inc.,* D.Mass. Civil Action No. 1:09-cv-11464,

13

2010 U.S. Dist. LEXIS 145990, at *4-5 (Sep. 13, 2010) (approving FLSA settlement where it was "the result of arms-length negotiations between experienced counsel representing the interests of the plaintiffs and defendant, after thorough factual and legal investigation"). Recognizing the uncertain legal and factual issues involved, the Parties reached the settlement pending before the Court after private mediation before an experienced mediator, and continued months of negotiations and data exchanges for months after the unsuccessful mediation. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel.

The total settlement amount of $725,000.00 is substantial, especially in face of the considerable risks that Plaintiffs faced. The Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers thousands of data points from the records produced by Defendant. Prior to the settlement discussions, Defendant performed an internal audit and computation to determine damages computations – this damages computational methodology correlated with Plaintiff's calculations for settlement negotiations, although the Parties disagreed as to the ultimate number of compensable pre- and post-shift minutes employees may have engaged in that was not paid. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Second, given that the factual and legal issues in this case are highly disputed and complex, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that Plaintiffs will receive significant compensation. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to Plaintiffs to this action. There was a serious risk that Plaintiffs would not succeed on a motion for FLSA notice, or in maintaining a collective through trial. Defendant would likely argue that individualized questions precluded certification, or would warrant decertification of a collective. Although Plaintiffs disagree, defendants have prevailed on such arguments. *See, e.g.*, *O'Donnell v. Robert Half Int'l, Inc.,* 534 F. Supp. 2d 173, 181 (D. Mass. 2008) (finding plaintiffs failed to "identify a common policy" to which workers were subject to and denying certification). Given that the factual and legal issues in this case are highly disputed and complex, there is no guarantee that Plaintiffs will obtain conditional certification and the litigation could be long and protracted. In contrast, the Settlement assures that Plaintiffs will receive significant compensation. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to Plaintiffs to this action.

Third, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs' claims (and potential damages) primarily arise out of pre-shift activities allegedly requiring Plaintiff Sales Agents to start up computers, load programs, and conduct other pre-shift work duties to be prepared to commence work immediately upon the start of their workday. Defendant disputed both the time involved to perform pre-shift duties and that employees were required to have those duties completed prior to the assigned start time for their workday, and contended that any startup time, if compensable, required mere seconds at the start of the workday, not several minutes as claimed by Plaintiffs. Defendant also contends that, to the

15

extent such time was compensable work as defined by the FLSA, it would be subject to the *de minimis* exception and not compensable. Finally, Defendant contends that it maintains established policies and practices and a straightforward process for Sales Agents to report any work completed before and after shifts, and that Sales Agents were in fact required by Defendant to report any work completed "off the clock."

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiffs would need to: (1) convince the Court that the FLSA overtime claims should proceed on a collective basis under 29 U.S.C. § 216(b); (2) prove that each worker of the collective performed unpaid overtime hours each workweek, in addition to the amounts of these times, and defeat Defendant's argument that the times and amounts of pre- and post-shift overtime hours Plaintiffs allege, both with regard to frequency and duration, are an exaggeration that cannot be supported with admissible evidence; (3) defeat Defendant's legal and factual arguments that all required applicable remuneration was included properly in the regular rate when calculating overtime compensation; and (4) defeat Defendant's legal and factual arguments that any violation was not willful and that Defendant is entitled to a good faith defense. Moreover, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The Settlement assures that the Plaintiffs will receive significant compensation.

Fourth, the proposed settlement allocation is eminently fair, equitable, and reasonable. The proposed method of settlement allocation – based on the number of weeks covered Sales agents worked for Defendant – is both reasonable and fair to all, and reflects a reasonable approximation of each Eligible Settlement Class Member's damages. *See* Ex. A, Settlement Agreement ¶ 3.4 (allocation plan). *See, e.g.*, *Lapan v. Dick's Sporting Goods, Inc.,* D.Mass. No.

1:13-cv-11390-R, 2015 U.S. Dist. LEXIS 169508, at *3-4 (Dec. 11, 2015) (approving class and collective overtime settlement agreement with an allocation formula based upon the number of weeks worked by class members) (ECF No. 209-3); *Henry v. Little Mint, Inc.,* S.D.N.Y., 2014 U.S. Dist. LEXIS 72574, at *8-9 (May 23, 2014) (approving allocation formula based in part on "number of workweeks during which they were employed at Dishes as delivery persons during the Class Period").

Moreover, to the extent they decide to opt-into the matter, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Class Members representing a substantial percentage of the potential value of their claims – *see* Section I, B, *supra* – and achieves an excellent result for the covered employees. Given the exceptional recovery in this case and uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs is in the public interest, supporting that the settlement is a fair and reasonable resolution of a *bona fide* dispute, and therefore the Settlement should be approved.

### C.    The Proposed Settlement Notice and Claim Form Should be Approved

The Court should approve the proposed Settlement Notice and Claim Form. The proposed Settlement Notice properly describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments and provides each Eligible Settlement Class Member's individual approximate recoveries, clearly describes the options open to the Class Members and deadlines for taking action, clearly explains the consequences of participating (and not participating) in the settlement, describes the terms of the proposed settlement, discloses benefits provided to the class representative, provides information regarding attorney's fees and costs, explains the procedure for distributing settlement funds,

informs Class Members how to request inclusion in the case, notifies Class Members that they

may retain an attorney of their own choice if they so desire, and prominently displays the address

and telephone number of Plaintiffs' Counsel and the Settlement Administrator and the procedure

for making inquiries. The Notice is written in plain and understandable language. *See*, *e.g.*,

*Lapan*, 2015 U.S. Dist. LEXIS 169508, at *7-8 (approving notice that described settlement terms

and fee allocation); *see also Bozak v. FedEx Ground Package Sys.,* D.Conn. No. 3:11-cv-00738-

RNC, 2014 U.S. Dist. LEXIS 106042, at *9-10 (July 31, 2014) (approving FLSA notice

providing notice of settlement terms and options available). In sum, the Notice constitutes the

best notice that is practicable under the circumstances, and, therefore, should be approved.

### D. The Service Award to Plaintiff Herb Should Be Approved

Named Plaintiff Herb respectfully requests approval of a relatively modest Service

Award of $3,000.00. The Service Award Plaintiff requests is reasonable given the significant

contributions he made to finalize the resolution of the lawsuit. Importantly, this service award

also provides consideration for Plaintiff Herb's agreement to waive all claims, known or

unknown, against Defendant, a complete release of claims, employment or otherwise. *See* Ex. A,

Settlement Agreement ¶ 4.4.

A reasonable service award properly recognizes a leading plaintiff's services on behalf of

other beneficiaries of the settlement and their contributions to achieving a positive outcome. *See*

*Scovil,* 2014 U.S. Dist. LEXIS 33361, at *22 ("Because a named plaintiff is an essential

ingredient of any class action, an incentive award can be appropriate to encourage or induce an

individual to participate in the suit."); *see also Bozak*, 2014 U.S. Dist. LEXIS 106042, at *12-13

("in employment litigation, the plaintiff is often a former or current employee of the defendant,

and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole,

undertaken the risk of adverse actions by the employer or coworkers." (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks omitted)).

Service awards are efficacious ways to encourage members of a class to become class representatives and reward individual efforts taken on behalf of the class, including for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming a litigant, and any other burdens sustained. *See, e.g.*, *In re Celexa & Lexapro Marketing & Sales Practices Litigation,* D.Mass. No. MDL No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041, at *25-26 (Sep. 8, 2014) ("The purpose of [] incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class.") (citing *see, e.g., Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (citation omitted).

In examining the reasonableness of a requested service award, courts consider "the steps [the] individual [has] taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation,[] and any negative effects that they have risked." *Scovil*, 2014 U.S. Dist. LEXIS 33361, at *22 (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Plaintiff Herb undertook substantial direct and indirect risk. Plaintiff agreed to assert the action in his name, agreed to represent the interests of similarly situated employees and to participate in the prosecution of this litigation, agreed to be deposed, interviewed, or asked to supply other information and documents to respond to discovery requests, and agreed to not have any interest antagonistic to or in conflict with other Class Members with respect to the claims alleged in the lawsuit. In so doing, Plaintiff assumed significant risk that, should the suit fail, he

could find himself liable for the defendant's costs or even – if the suit was held to have been frivolous – for the defendant's attorneys' fees. *See Koszyk v. Country Fin., N.D.Ill.,* 2016 U.S. Dist. LEXIS 126893, at \*6-7 (Sep. 16, 2016) (quoting *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-877 (7th Cir.2012)); *Aros v. United Rentals, Inc.,* D.Conn. No. 3:10-CV-73 (JCH), 2012 U.S. Dist. LEXIS 104429, at \*8-9 (July 26, 2012) ("Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny") (citing *see, e.g., Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,* No. 08 Civ. 7670, at \*1 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez,* 2007 WL 7232783, at \*7 ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (additional citations omitted).

Although Plaintiff here was no longer employed by Defendant when he joined the lawsuit, he merits recognition for risking retaliation from future employers for the benefit of all Eligible Settlement Class Members. *See, e.g., DeLeon v. Wells Fargo Bank, N.A.,* S.D.N.Y., 2015 U.S. Dist. LEXIS 65261, at \*15 (May 7, 2015) (recognizing "the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer…"); *Sewell v. Bovis Lend Lease LMB, Inc*., S.D.N.Y., 2012 U.S. Dist. LEXIS 53556, at \*42 (Apr. 16, 2012) ("former employees [] face potential risks of being blacklisted as 'problem' employees"); *Guippone v. BH S&B Holdings, LLC,* S.D.N.Y., 2011 U.S. Dist. LEXIS 126026, at \*20 (Oct. 28, 2011) ("Today,

the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Finally, courts routinely approve service awards equal to or significantly greater than the relatively modest $3,000 service award requested here. *Scovil*, 2014 U.S. Dist. LEXIS 33361, at *24-26 ("Recent cases reflect that distinction in not only employment discrimination cases but also in wage and hour cases, where recently awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher") (citing, *e.g., Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.Rev. 1303, 1308 (2006); *Massiah v. MetroPlus Health Plan,* Inc., No. 11-cv-05669(BMC), 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs)); *DeLeon,* 2015 U.S. Dist. LEXIS 65261, at *15 ($15,000); *Mongue v. Wheatleigh Corp*., D.Mass. No. 3:18-cv-30095-KAR, 2024 U.S. Dist. LEXIS 69928, at *16-17 (Apr. 16, 2024) ($5,000); *Pallotta v. Univ. of Massachusetts Mem. Med. Ctr.,* D.Mass. Civil Action No. 4:22-cv-10361-ADB, 2023 U.S. Dist. LEXIS 215863, at *7-8 (Dec. 5, 2023) ($8,500); *Anderson v. Team Prior, Inc.,* D.Me. No. 2:19-cv-00452-NT, 2022 U.S. Dist. LEXIS 196144, at *18-19 (Oct. 28, 2022) ($5,000) (noting, as here, "[i]n exchange for this service payment, Mr. Anderson agreed to an additional general release of claims").

Here, Plaintiff Herb's actions have resulted in substantial benefit to the FLSA Collective. Plaintiff Herb faithfully represented the interests of all persons and ably assisted Plaintiffs' Counsel in this matter. His contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $3,000 is reasonable and well-earned, and in exchange for this service payment, Plaintiff has agreed to an additional general release of claims. Defendant has no objection to this award.

E.    **Plaintiffs' Counsel's Request for Attorney Fees and Costs Should be Approved as Fair and Reasonable**

There are two ways to compensate attorneys for successful prosecution of statutory claims — the lodestar method and the percentage of the fund method. Plaintiffs' Counsel respectfully submits that the attorney fees in the amount of one-third percentage (33.33%) of the fund, or $241,642.50,[3] with a negative/inverse lodestar multiplier of **.84** – in addition to additional hours to be incurred through the administration and final conclusion of this matter that will further reduce the multiplier – request here satisfies both methods and should be approved. The value of the benefit rendered to the class eminently favors approval of the requested award. First Circuit authority favors approval. The requested attorney fee award and costs reimbursement should be approved for all of the following reasons.

The First Circuit has approved the percentage-of-the-fund method to determine a reasonable attorney's fee. *See, e.g., In re Thirteen Appeals, In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 306-307 (1st Cir.1995). The Court has noted that the "POF method in common fund cases is the prevailing praxis and by the distinct advantages that the POF method can bring to bear in such cases." *Id.* at 307. The percentage of the fund method promotes early resolution of cases, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See id.* ("using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency"); *see also Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1300 (11th Cir.1988) ("From the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively

---

[3] As further provided below, Plaintiffs' Counsel also respectfully request a litigation costs and expenses reimbursement in the total amount of $5,693.20.

than the sustained and methodical trench warfare of the classical litigation model."); *Guippone*,
2011 U.S. Dist. LEXIS 126026, at *37-38 ("Class Counsel's requested percentage of the fund
encourages prompt and efficient resolution of class litigation such as this") (citing *see Swedish
Hospital Corp. v. Shalala*, 1 F.3d 1261, 1268, 303 U.S. App. D.C. 94 (D.C. Cir. 1993));
*Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS
20446, at *19 (Mar. 8, 2010) ("[t]he percentage of the common fund method has the advantage
of establishing reasonable expectations on the part of class counsel 'as to their expected
recovery,' and encourag[es] early settlement before substantial fees and expenses have
accumulated."). Where attorneys' fees are limited to a percentage of the total, there is a strong
disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options."
*In re Thirteen Appeals*, 56 F.3d at 307.

    Plaintiffs' request for one-third of the common fund settlement as attorneys' fees, plus
reasonable costs and expenses, is reasonable. When counsel's efforts result in the creation of a
common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."
*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing *see Mills v. Electric Auto-Lite Co.,*
396 U.S. 375 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); citing cf. *Hall v.
Cole*, 412 U.S. 1 (1973)); *see In re Thirteen Appeals,* 56 F.3d at 307. This is "founded on the
equitable principle that those who have profited from litigation should share its costs." *Id.,* 56
F.3d at 305 n.6.

    Notably, "[a] one-third contingent fee is common in class action wage-and-hour cases,"
*O'Connor*, 2018 U.S. Dist. LEXIS 102244, at *10 (citing *Scovil*, 2014 U.S. Dist. LEXIS 33361
at *20-22; citing *see also Curtis*, 2016 U.S. Dist. LEXIS 70410, at *10-11), and fee requests of
one third of the common fund have been consistently approved by courts in this District as

reasonable. *See, e.g., Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) (Dein, M.J.) (approving one-third of $1.4 million settlement fund in misclassification case ) (settlement approval motion at ECF No. 58); *see also Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) (approving one-third of $10 million settlement plus costs and expenses in wage case) (settlement approval motion at ECF No. 215); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving one-third of $900,000 settlement fund in wage case) (final settlement approval motion at ECF No. 106); *Scovil,* 2014 U.S. Dist. LEXIS 33361, at *20-22 (approving one third of $5.8 million settlement fund in wage case, and noting that one-third of the common fund fee is "**consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts, still another market signal**") (emphasis added); *Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) (approving one-third of $23.5 million settlement for settlement of wage claims) (approval motions at ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse*, *Inc., et al*., No. 11 Civ. 10549 (D. Mass. September 5, 2012) (approving one-third of $5 million settlement fund for wage claims) (approval motion at ECF No. 53); *Cutter v. HealthMarkets, Inc*., *et al*., No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) (approving one-third of common fund settlement in wage case) (approval motion at ECF No. 77).

While Plaintiffs' Counsels' request for one-third of the settlement fund as attorneys' fees is reasonable in light of the significant benefit counsel's efforts conferred on the class, a lodestar "doublecheck" or "crosscheck" further confirms that the fees Plaintiffs are seeking from the common fund are reasonable. Within this Circuit, courts *may* look at counsel's lodestar fees to doublecheck the reasonableness of a percentage-of-common-fund fee award. *See, e.g., Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (noting that the lodestar method can

be used to "double-check" the reasonableness of a fee); *New Eng. Carpenters Health Benefits Fund v. First Databank*, D.Mass. No. 05-11148-PBS, 2009 U.S. Dist. LEXIS 68419, at *8-9 (Aug. 3, 2009) ("In the First Circuit, '[t]he lodestar approach . . . can be a check or validation of the appropriateness of the percentage of funds fee, but is not required.'") (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig*., 216 F.R.D. 197, 215-16 (D. Me. 2003); *In re Thirteen Appeals*, 56 F.3d at 307; citing *see also* Manual for Complex Litigation (Fourth) § 14.122 (2004) ("the lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant. The total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.")); *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 81 (D. Mass. 2005) (the First Circuit "does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee."); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050 (9th Cir. 2002) ("While the primary basis of the fee award remains the percentage method, the lodestar may provide a useful *perspective* on the reasonableness of a given percentage award.") (emphasis added).

As noted above, while the First Circuit does not *require* the Court to perform the cross check, *In re Relafen Antitrust Litig*., 231 F.R.D. at 81, the lodestar method here also eminently supports approval in this case. Plaintiffs' Counsel's current hours in this matter, multiplied by reasonable hourly rates, comes out to $286,245.00. Specifically, as of the date of Plaintiffs' Counsels' declarations, Plaintiffs' Counsel had a collective 435.7 hours in this case – a fee lodestar of $286,245.00. As to Scott & Winters Law Firm, LLC, as of June 3, 2024, attorney Joseph F. Scott had 79 hours at $800 per hour; Ryan A. Winters had 92.3 hours at $650.00 per

hour; and Kevin M. McDermott II had 247.8 hours at $600.00 per hour, Ex. D, Decl. of R.

Winters at ¶ 36. As to Gordon Law Group, LLP, as of June 3, 2024, attorney Philip J. Gordon

had 2.6 hours at $950 per hour; and Kristen M. Hurley had 14 hours at $850.00 per hour. Ex. E,

Decl. of P. Gordon at ¶ 26. In addition, the lodestar multiplier will decrease, as further discussed

below, because of the anticipated additional time that Plaintiffs' Counsel will continue to spend

on this case through the administration of this matter and disbursement of settlement proceeds.

At a combined fee lodestar of $286,245.00 (as of June 3, 2024, the date of Plaintiffs'

Counsels' declarations), the requested attorney fee of $241,642.50 results in a negative/inverse

lodestar multiplier of **.84** if the Court approves the requested settlement payment as to attorneys'

fees. Such a multiplier eminently supports that the fee sought is reasonable, and given that

Plaintiffs' Counsel's lodestar is on the very low end of the acceptable range, a lodestar review of

the attorneys' fees to be paid to Plaintiffs' Counsel eminently supports the reasonableness of the

fee request. *See, e.g., Roberts v. TJX Cos*., D.Mass. Civil Action No. 13-cv-13142-ADB, 2016

U.S. Dist. LEXIS 136987, at *44-45 (Sep. 30, 2016) (approving 1.96 lodestar multiplier and

noting that "[m]ultipliers of 2 and more have been found reasonable in common fund cases.")

(citing *see In re Relafen*, 231 F.R.D. at 82 (finding a "multiplier of 2.02" to be "appropriate"

based on comparison of cases); citing *see also Long v. HSBC USA Inc*., No. 14 CIV. 6233, 2016

U.S. Dist. LEXIS 124199, 2016 WL 4764939, at *12 (S.D.N.Y. Sept. 13, 2016) ("a multiplier

near 2 should, in most cases, be sufficient compensation for the risk associated with contingent

fees in FLSA cases") (quoting *Sakiko Fujiwara v. Sushi Yasuda Ltd*., 58 F. Supp. 3d 424, 438-39

(S.D.N.Y. 2014))); *Conley,* 222 B.R. at 182 (approving lodestar multiplier of 8.9, even where

plaintiffs' counsel "piggyback[ed]" on prior success by another firm in a different case); *New*

*Eng. Carpenters*, 2009 U.S. Dist. LEXIS 68419, at *9-10 (awarding fees representing 8.3 lodestar multiplier).

Moreover, as Plaintiffs' Counsels' lodestar is a ***negative/inverse multiplier*** of **.84**, Counsel's fee request is well within the range of reasonability. *See, e.g., Bryant v. Potbelly Sandwich Works*, LLC, S.D.N.Y. No. 1:17-cv-07638 (CM) (HBP), 2020 U.S. Dist. LEXIS 21900, at *19-20 (Feb. 4, 2020) (even "[w]here a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of overcompensation.'") (quoting *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009)). Such a negative multiplier eminently supports that the fee sought is reasonable, *see, e.g, Rikos v. P&G,* S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank*, N.A., Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)), and given that Plaintiffs' Counsel's lodestar is on the very low end of the acceptable range, a lodestar review of the attorneys' fees to be paid to Plaintiffs' Counsel eminently supports the reasonableness of the fee request. *See also, e.g., Beebe v. V&J Natl. Ents., LLC*, W.D.N.Y. No. 6:17-CV-06075 EAW, 2020 U.S. Dist. LEXIS 96059, at *25 (June 1, 2020) (negative multiplier "militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risks undertaken by class counsel.") (citations omitted); *Dickerson v. York Int'l Corp*., No. 15-cv-1105, 2017 U.S. Dist. LEXIS 133587, 2017 WL 3601948, at *11 (M.D. Pa. Aug. 22, 2017) ("A negative multiplier reflects that counsel is requesting only a fraction of the billed fee; negative multipliers thus 'favor[ ] approval.'") (citations omitted).

Prosecuting wage an hour litigation in federal court is always difficult and time-consuming, and the activities of Plaintiffs' Counsel in this matter were significant. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential defendants; preparation of the Complaint (and, ultimately, Amended Complaint); and negotiation and submission of the Parties' Rule 26(f) report. Plaintiffs' Counsel drafted and issued Plaintiff's Omnibus First Set of Discovery Requests to Defendant. Defendant ultimately produced spreadsheets containing timekeeping and payroll data comprised of thousands of data points. These documents and data were extensively analyzed by Plaintiffs' Counsel for damages, settlement evaluation and mediation purposes. The analyses, investigation, and discovery were time-consuming, but proved instrumental to the negotiation of the proposed Settlement. Plaintiffs' Counsel also conducted extensive investigations into the facts before and during the prosecution of the Action. This discovery and investigation included, among other things, (a) multiple meetings and conferences with the Court, Plaintiff, and Defendant's Counsel; (b) inspection and analysis of the collective-wide payroll documents produced by the Defendant including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology from the records produced by Defendant; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of class treatment and collective action treatment; (e) analysis of potential class/collective-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto.

Moreover, Plaintiffs' Counsel's lodestar has not been adjusted to account for the time Plaintiffs' Counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, continuing to respond to questions and inquiries

from Named Plaintiff and the hourly employees of Defendant who join, or are entitled to join, this matter as Opt-In Plaintiffs / Class Members, and continuing representation of Named Plaintiff and Class Members through the conclusion of this matter and disbursement of settlement proceeds. Plaintiffs' Counsel have extensive experience in these matters, and are well familiar with the additional tasks that Counsel will dutifully complete through this matter's conclusion. The timeline for settlement administration established by the Parties' agreement will require the settlement administration to last approximately six months after the final approval order is entered. Once final approval is entered, during the notice period, and after settlement checks are sent to Class Members, Plaintiffs' Counsel will likely receive telephone calls, text messages and emails from Class Members regarding the case. Settlement participants routinely contact Counsel for questions regarding the exact nature of the litigation, the effect of settlement, the precise calculation methodology for their individual awards, and the anticipated timeline for receiving a payment, even after the entering of final approval. The demands on Plaintiffs' Counsel in completing its obligations, as well as overseeing administration of a settlement of this size, is of no small undertaking. Plaintiffs' Counsel's lodestar also does not include the additional attorney hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion and related exhibits up to and until the filing of this motion (between June 3, 2024 (Counsel's declarations date) and the date of this filing), and any other work completed after June 3, 2024.

In addition, the Settlement Agreement allows for Plaintiffs' Counsel to request reimbursement of actual case-related costs and expenses from the Gross Settlement Amount. As of June 3, 2024, Plaintiffs' Counsel has $5,693.20 in actual case-related costs and expenses. These costs and expenses consist of the case filing fee, pro hac vice fees, mediation costs, and

postage/shipping costs. These itemized expenses constitute costs that were reasonably necessary to prosecute the action. *See* Ex. D ¶ 38. Similar expenses have been found reasonable and approved in other matters in this District. *See, e.g., Carlson v. Target Enters., Inc.,* 447 F. Supp. 3d 1, 6 (D. Mass. 2020) (approving expenses for "costs associated with mediation, travel expenses, filing fees, and postage"); *Bezdek v. Vibram USA Inc.,* 79 F. Supp. 3d 324, 351-352 (D.Mass.2015) ("The listed expenses include, among other things, costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings. I find these expenses reasonable and will allow the request.").

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## IV.    CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court issue an order: (1) approving the $725,000.00 FLSA Collective settlement set forth in the Settlement and Release Agreement; (2) approving the proposed Settlement Notice and directing its distribution; (3) approving a Service Award of $3,000 to Named Plaintiff Robert Herb for his service to the FLSA Collective; (4) approving the Settlement Administrator's fees and costs in the total amount of $12,978.00; (5) approving Plaintiff's request for one-third of the settlement fund as attorneys' fees ($241,642.50), plus reimbursement of costs and expenses ($5,693.20); (6) incorporating the terms of the Settlement Agreement; (7) dismissing the action with prejudice; and (8) retaining jurisdiction to enforce the Settlement and Release Agreement.

Date: June 7, 2024                                    Respectfully submitted,

/s/ Joseph F. Scott
Joseph F. Scott*
Ohio Bar No. 0029780
Ryan A. Winters*
Ohio Bar No. 0086917
SCOTT & WINTERS LAW FIRM, LLC
P: (216) 912-2221 F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II*
Ohio Bar No. 0090455
SCOTT & WINTERS LAW FIRM, LLC
P: (216) 912-2221 F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*and*

Philip J. Gordon
Mass. BBO# 630989
Kristen M. Hurley
Mass. BBO# 658237
GORDON LAW GROUP, LLP
585 Boylston St.
Boston, MA 02116
617-536-1800 – Telephone
617-536-1802 – Facsimile
pgordon@gordonllp.com
khurley@gordonllp.com

*Attorneys for Plaintiff and Proposed FLSA
Collective Action Plaintiffs*

*\*PROCEEDING PRO HAC VICE*

/s/ Diane M. Saunders (via email consent)
Diane M. Saunders (BBO# 562872)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
617.994.5700 office
617.994.5704 direct
617.699.2375 mobile
617.994-5701 fax
diane.saunders@ogletreedeakins.com

*Attorney for Defendant
Homesite Group Incorporated*

31

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all Parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Date: June 7, 2024                                              /s/ *Joseph F. Scott*
                                                                Joseph F. Scott
                                                                Ohio Bar No. 0029780

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS**

I, undersigned counsel, hereby certify that the memorandum contained herein complies with the page limitations established by the Court's Order dated June 3, 2024. *See* Local Rule 7.1(b)(4).

Date: June 7, 2024                                              /s/ *Joseph F. Scott*
                                                                Joseph F. Scott
                                                                Ohio Bar No. 0029780