UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT HERB, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HOMESITE GROUP INCORPORATED,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 1:22-cv-11416-JEK<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM AND ORDER ON JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

**KOBICK, J.**

This is a putative collective action filed against Homesite Group Incorporated for nonpayment of wages to its sales agents. The complaint alleges that Homesite failed to pay its agents overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), violated Ohio law by not compensating them for either overtime or non-overtime work, and was unjustly enriched as result. The parties have agreed upon settlement terms regarding the plaintiff's overtime claims. Pending before the Court is the parties' joint motion for approval of their FLSA collective action settlement. For the reasons to be explained, this Court will grant the motion.

### BACKGROUND

This action was originally filed by Melissa Deaver in September 2022. ECF 1. In May 2024, the Court granted leave to file an amended complaint that substituted Robert Herb as plaintiff. ECF 49, 50. Homesite is a property and casualty insurance company based in Boston that

employs non-exempt,[1] hourly sales agents. ECF 50, ¶¶ 12, 14. Herb was employed by Homesite as a sales agent. *Id.* ¶ 19. Homesite allegedly fails to compensate its agents for their time spent at the start and end of each shift logging into or out of its computer system, phone system, and software applications. *Id.* ¶¶ 26-28, 32. Herb estimates that he and other agents regularly perform ten to fifteen minutes at the start of each shift, and five minutes or more at the end of every shift, on such unpaid "off-the-clock" work. *Id.* ¶¶ 30-32. Herb thus claims that Homesite is liable for failing to pay him and other agents for all of the work that they perform, including overtime pay when they work over forty hours and regular wages when they work under forty hours in a given week. *Id.* ¶¶ 24-25, 41-42, 57, 84.

The complaint raises three claims. Count I asserts a claim under the FLSA, 29 U.S.C. § 207(a), for failure to compensate Herb and similarly situated employees at 1.5 times their regular rate of pay for work performed in excess of forty hours per week. *Id.* ¶¶ 89-95. Count II asserts a claim under Ohio law challenging Homesite's alleged failure to pay Herb and fellow agents not only overtime pay but also the contractual hourly wage for off-the-clock work performed in weeks when they work no more than forty hours. *Id.* ¶¶ 84, 96-104. Count III asserts that Homesite was unjustly enriched by failing to pay employees for all off-the-clock work performed. *Id.* ¶¶ 105-11.

After filing its original answer in November 2022, Homesite answered the amended complaint in May 2024 denying Herb's allegations. ECF 9, 54. Over the course of this litigation, the parties engaged in extensive discovery. ECF 61-4, ¶¶ 32-33. After unsuccessfully participating in mediation in November 2023, the parties ultimately executed the terms of a proposed settlement agreement in June 2024. *Id.* at 16, 41; *see* ECF 61-1. The eligible class members include all current

---

[1] Employees classified as "non-exempt" are covered by the FLSA's minimum wage and overtime pay provisions. *See* 29 U.S.C. §§ 206(a), 207(a), 213.

and former employees employed by Homesite in the position of sales agent from June 6, 2020 to February 15, 2024. *See* ECF 61-1, § 1.9; ECF 62, at 7.

## DISCUSSION

The FLSA provides that an "action to recover the liability" for minimum wage or overtime violations "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Recognizing that the parties and the "judicial system benefi[t] by efficient resolution in one proceeding of common issues of law and fact," *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), Congress crafted section 216(b) "to enable all affected employees working for a single employer to bring suit in a single, collective action," *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022).

As an initial matter, the parties' requested one-step approval process is appropriate in this case because the proposed FLSA settlement does not include any Federal Rule of Civil Procedure 23 class releases. *See Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (collecting cases). The approval of a settlement agreement under Rule 23(e) is a two-step process that first requires the court to make a preliminary determination about the fairness, reasonableness, and adequacy of the terms before determining, after a hearing, whether to issue final approval. *Mongue v. Wheatleigh Corp.*, No. 3:18-cv-30095-KAR, 2023 WL 5435918, at *4 (D. Mass. Aug. 23, 2023). But unlike Rule 23 class actions where uninterested employees must opt out of settlement, FLSA collective actions require workers to affirmatively opt in. *Cunha v. Avis Budget Car Rental, LLC*, 221 F. Supp. 3d 178, 181 (D. Mass. 2016). The FLSA specifically states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in

3

the court in which such action is brought." 29 U.S.C. § 216(b). An FLSA settlement is, in other words, not binding on absent class members. *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *5 n.7 (D. Mass. Sept. 30, 2016). Since those who do not opt in to an FLSA collective may, in turn, initiate their own lawsuits, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Lauture*, 2017 WL 6460244, at *1.

I.     **Settlement Agreement.**

A court may approve an FLSA settlement if the parties agreed to it and "it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Drexler v. TEL NEXX, Inc.*, No. 13-cv-13009-ADB, 2019 WL 3947206, at *1 (D. Mass. Aug. 21, 2019) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). While the First Circuit has not articulated a test for making such a determination, courts generally "consider the 'totality of the circumstances,'" including "'(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.'" *Id.* at *2 (quoting *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260-61 (D. Mass. 2015)). "The court's role is to ensure that the settlement 'reflect[s] a reasonable compromise over issues . . . that are actually in dispute,' rather than a pure discount on clearly-owed wages." *Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (quoting *Lynn's Food*, 679 F.2d at 1354).

Under this framework, the parties' proposed settlement is fair and reasonable. *See* ECF 61-1. First, the gross settlement amount of $725,000—of which $461,686.30 will go to members of

4

the collective once fees, costs, and the service award are deducted—is a substantial sum that affords meaningful relief to agents who opt in. That sum is based on an additional 9.2 minutes per day of off-the-clock work during overtime weeks, which reflects a compromise between Herb's position of 20 minutes and Homesite's position that any time is *de minimis*. See ECF 62, at 5-6. Because the settlement represents nearly half of what Herb sought in overtime pay, it constitutes a reasonable amount. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *3, *8 (N.D. Ohio June 15, 2010) (approving "exceptional" settlement concerning "compensation for time booting up [the] computers prior to clocking in" where members were paid "between 75% (based on five minutes) to 25% (based on 8 minutes) of claimed unpaid wages" and noting that this "allocation is well above the 7% to 11% average result achieved for class members"); *Bradford v. Naples Causeway Dev., LLC*, No. 2:21-cv-00015-NT, 2022 WL 3154760, at *2 (D. Me. Aug. 8, 2022) (characterizing FLSA settlement of "approximately 20.8% of the best-case-scenario maximum [plaintiff] could recover after success at trial and any appeals" as "a reasonable compromise"). The proposed method of allocation based on the number of weeks sales agents worked for Homesite is also reasonable because it adequately approximates the proportion of damages that each agent has suffered. *Mongue*, 2023 WL 5435918, at *9.

Second, the settlement permits the parties to avoid the burden and expense of establishing their respective claims and defenses. Were this case to continue, in order to prevail, Herb would have to, among other things, prove that his FLSA overtime claims should proceed on a collective basis under 29 U.S.C. § 216(b), demonstrate that Homesite has a policy of excluding off-the-clock work, and establish how much time agents actually spend on such work before and after each shift. ECF 61-4, ¶ 17. For its part, to prevail, Homesite would likely argue the merits of some of its 33

affirmative defenses or show that it has properly paid its employees. *Id.*; ECF 54, at 21-27. Given the disputed factual and legal issues in this case, the settlement is fair.

Third, the settlement avoids the costs, risks, uncertainties, and delays associated with continued litigation. ECF 61-4, ¶¶ 19-20. Advancing the parties' respective arguments through further discovery and trial could be costly and time consuming. *Id.* ¶¶ 17, 19-20. Herb risks losing at summary judgment or trial, precluding any recovery for him and his fellow agents. *Id.* ¶ 20.

Fourth, the settlement was the product of arm's-length negotiations between experienced counsel after extensive factual and legal investigation both before filing suit and during discovery. *Id.* ¶¶ 4-11, 18, 21; ECF 61-5, ¶¶ 1-15; ECF 62, at 3-4; *see Woolfson v. Caregroup, Inc.*, No. 1:09-cv-11464, 2010 WL 10063268, at *2 (D. Mass. Sept. 13, 2010) (approving settlement in part on similar grounds). Herb's counsel has led or been involved in hundreds of wage and hour matters in numerous federal and state courts, including several cases asserting FLSA or analogous state law claims where courts have noted their substantial experience. ECF 61-4, ¶¶ 6, 8, 10-11. In this action, Herb's counsel investigated the plaintiff's claims and the identities of potential defendants, prepared the complaint and amended complaint, negotiated and submitted the parties' Federal Rule of Civil Procedure 26(f) report, and served discovery requests on Homesite. *Id.* ¶¶ 31-32. Herb's counsel also analyzed, among other materials, comprehensive timekeeping and payroll spreadsheets that Homesite produced in response to those discovery requests. *Id.* ¶¶ 32-33.

Finally, there is no reason to suspect, nor does either party assert, that fraud or collusion played any role in achieving the settlement. The proposed settlement is, therefore, approved as a fair and reasonable resolution of Herb's overtime claims.

**II.     Settlement Notice.**

The FLSA requires that the settlement notice "communicate accurate information about the suit in order to enable potential collective action members to 'make informed decisions about whether to participate.'" *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *10 (D. Me. Mar. 17, 2015) (quoting *Hoffman-La Roche*, 493 U.S. at 171). The parties' proposed notice of settlement sufficiently summarizes this litigation and the terms of the settlement; estimates payments to potential collective members and how those payments will be issued; describes how such members can submit a claim and the deadline for doing so; and provides information about attorney's fees and costs as well as Herb's service award. *See* ECF 61-3. Because the notice properly provides accurate information to eligible settlement collective members, it is approved. *See Lauture*, 2017 WL 6460244, at *2 (approving notice with similar information); *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390-RGS, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015) (approving notice that, among other things, "describes the terms of the settlement" and "informs the class about the allocation of attorneys' fees").

**III.    Service Award.**

"Courts have blessed incentive payments for named plaintiffs in class actions for nearly a half century" in part because those plaintiffs "bear the brunt of litigation (document collection, depositions, trial testimony, etc.)." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 352-53 (1st Cir. 2022) (rejecting challenge to awards between $2,000 and $10,000 for named plaintiffs while vacating approval of the settlement on other grounds). Service "awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture*, 2017 WL

6460244, at *2. To assess the reasonableness of such awards, "courts consider: '(1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative effects that they have risked.'" *Id.* at *3 (*Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014)).

All four factors are satisfied here. Herb protected the interests of potential collective action members by participating in this litigation, which resulted in a substantial benefit to the class: a settlement that would likely not have been reached otherwise. According to counsel, Herb was "instrumental in achieving" the settlement and expended time "faithfully represent[ing] the interests of" the class and "ably assist[ing]" counsel in pursuing this action. ECF 62, at 21. Herb "also assumed significant risk that 'should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [were] held to have been frivolous, for the defendant's attorneys' fees." *Lauture*, 2017 WL 6460244, at *3 (quoting *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012)). Given his contributions, even during the relatively short time period from the filing of the amended complaint to the settlement, the requested service award of $3,000 to Herb is approved. ECF 61-1, § 3.3(i). Indeed, courts routinely approve greater awards for similar contributions. *See, e.g.*, *Lauture*, 2017 WL 6460244, at *3 (approving $15,000 awards to two named plaintiffs); *Pallotta v. Univ. of Massachusetts Mem'l Med. Ctr.*, No. 4:22-cv-10361-ADB, 2023 WL 8435181, at *1 (D. Mass. Dec. 5, 2023) ($8,500); *Mongue v. Wheatleigh Corp.*, No. 3:18-cv-30095-KAR, 2024 WL 1659724, at *5 (D. Mass. Apr. 16, 2024) ($5,000); *Scovil*, 2014 WL 1057079, at *6 ("in wage and hour cases, . . . awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher").

**IV.     Attorney's Fees and Costs.**

The FLSA provides that, if the plaintiff prevails, courts must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The First Circuit has adopted two methods for calculating attorney's fees: (1) the "lodestar" method, and (2) the "percentage of fund" or "POF" approach. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). Under the first method, courts "arriv[e] at the lodestar by determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *Id.* Alternatively, the second approach permits courts to "shap[e] the counsel fee based on what [they] determin[e] is a reasonable percentage of the fund recovered for those benefitted by the litigation." *Id.* In a "common fund" case such as this one, courts can employ either approach or "a combination of both methods." *Id.* at 307-08.

Applying this framework, the requested $241,642.50 in attorney's fees is reasonable under both the POF and lodestar methods. This amount constitutes one-third of the settlement's $725,000 common fund, a percentage that is routinely approved. *See, e.g.*, *O'Connor v. Dairy*, No. 2:14-cv-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) ("A one-third contingent fee is common in class action wage-and-hour cases."); *Scovil*, 2014 WL 1057079, at *5 (a one-third contingent "fee is consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts" (collecting cases)). As a "'cross-check' [on] the reasonableness of a one-third POF fee award in this case," the fee award is also fair based on the lodestar method. *Roberts*, 2016 WL 8677312, at *13. Herb's counsel represent that they have dedicated 435.7 hours to this matter, which includes time spent investigating the claims before filing suit, drafting the complaint, issuing discovery requests, and reviewing Homesite's document productions. ECF 62, at 25, 28; ECF 61-4, ¶¶ 32-33, 36; ECF 61-5, ¶ 26. When those hours are multiplied by the reasonable hourly rates

9

for each attorney, the total fee comes out to $286,245. ECF 62, at 25-26; ECF 61-4, ¶ 36; ECF 61-5, ¶ 26. The requested attorney's fee of $241,642.50 is approximately 84% of that total—in other words, a negative lodestar multiplier of .84. ECF 62, at 26. The multiplier will decrease further with counsel's continued work in this case, including fulfilling their obligations under the settlement agreement. ECF 61-4, ¶¶ 34-35. While "[m]ultipliers of 2 and more have been found reasonable in common fund cases," *Roberts*, 2016 WL 8677312, at *13 (collecting cases), negative multipliers are even more reasonable because "there [is] 'no real danger of overcompensation' given that the requested fee represent[s] a discount to counsel's lodestar," *Hill v. State St. Corp.*, No. 09-cv-12146-GAO, 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) (citation omitted). In sum, both the POF and lodestar approaches point in the same direction: the requested attorney's fees are reasonable. Herb's counsel is, accordingly, awarded in $241,642.50 in attorney's fees.

The requested $5,693.20 in litigation costs and expenses is also approved. These costs consist of the case filing fee, three pro hac vice payments, mediation costs, and certain mailing expenses. ECF 61-4, ¶ 38. Courts regularly find such costs reasonable, and this Court does too. *See, e.g.*, *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 351-52 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

### V.     Settlement Administrator's Costs and Fees.

The parties also request $12,978 in fees and costs for the agreed-upon settlement administrator, Optime Administration, LLC. ECF 62, at 7, 10; ECF 61-1, § 1.25. Optime will be responsible for, among other duties, carrying out the notice plan and administering the settlement process. ECF 61-1, § 2.2. Those fees are reasonable and thus approved. *See Lauture*, 2017 WL 6460244, at *3 (approving $29,000 in such fees); *Mongue*, 2024 WL 1659724, at *7 (ordering the defendant to pay $5,750.25 for settlement administrator expenses).

**CONCLUSION AND ORDER**

For the foregoing reasons, the parties' joint motion for approval of their FLSA collective action settlement, ECF 61, is GRANTED. The Court will issue a separate order generally adopting the parties' proposed order, which summarizes these findings and authorizes dissemination of the notice.

SO ORDERED.

Dated: July 31, 2024

/s/ Julia E. Kobick
Julia E. Kobick
United States District Judge